FRANK ADAMS & COMPANY, INC., APPELLEE, *v.* BAKER, APPELLANT.

(No. C-800151—Decided April 8, 1981.)

*Mr. Donald G. Warschauer,* for appellee.

*Messrs. Rice & Ladrigan* and *Mr. Terrence F. Ladrigan,* for appellant.

*Per Curiam.* Defendant-appellant, Raymond H. Baker, asserts in his single assignment of error that the trial court erred in failing to apply the statute of frauds, R.C. 1302.04,[1] to the transaction between the parties; he claims that the court should not have rendered judgment against him for $4,753.32. We hold that the trial court properly decided that the statute of frauds was not a bar to recovery by plaintiff-appellee, Frank Adams & Co., Inc.

The transaction involved the purchase and sale of steel reinforcing rods for a retaining wall at the site of the residence that defendant was contemplating building for himself. The site was underneath a hill and required the con-

---

[1] R.C. 1302.04 reads as follows:

"(A)   Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more *is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.* A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

"(B)   Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of division (A) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

"(C)   A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is *enforceable*:

"(1)   *if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller,* before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(2)   if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(3)   *with respect to goods for* which payment has been made and accepted or *which have been received and accepted in accordance with section 1302.64 of the Revised Code.*" (Emphasis added.)

struction of an extensive retaining wall for which defendant had obtained engineering drawings. The drawings called for 1,514 reinforcing rods of various lengths, a number of which were required to be bent in the shape of an "L" with a hook at the tip of the base; the rods were designed to tie the footings and the walls together. Plaintiff's evidence was that defendant ordered the rods by telephone, and that this was done following a person-to-person conference during which defendant made a note on the engineering drawings of the cost as quoted by plaintiff. Defendant denies he ordered the steel.

The transaction was not reduced to writing and plaintiff did not send defendant a written confirmation of the sale. The steel rods were delivered to the construction site where, defendant concedes, the bundles were broken and the rods moved about in order to accommodate excavation work. Later, defendant abandoned the project. Plaintiff's testimony was that more than sixty days after delivery, defendant made ambiguous statements about needing time to pay. Defendant admitted on the witness stand that he had sold some of the rods to a third party.

The defense to plaintiff's suit on account was that the action was barred by the statute of frauds because there was no writing signed by defendant sufficient to indicate that a contract had been made. This is an affirmative defense and defendant had the burden to prove it. We find no error in the trial court's judgment for plaintiff because defendant failed to carry this burden. The state of the evidence was such that a reasonable mind could conclude that the sale *sub judice* fell within either or both of two exceptions to the statute's requirement of a writing.

First, R.C. 1302.04(C)(1) makes a con-tract enforceable even though not signed in writing when the goods are specially manufactured and are not suitable for sale to others in the ordinary course of business. See *Perlmuter Printing Co.* v. *Strome, Inc.* (N.D. E.D. Ohio 1976), 436 F. Supp. 409; *Associated Lithographers* v. *Stay Wood Products, Inc.* (Minn. 1979), 279 N.W. 2d 787. The rods that were bent meet that test precisely. Defendant responds by making two claims: (1) the bent rods were not fashioned exactly as required by the engineering drawings, and (2) the unbent rods (which counsel asserts were worth $2,100) were taken out of stock and were not "specially manufactured." We are not persuaded by either of these arguments because there was evidence from which a reasonable mind could conclude that the rods, as bent by the plaintiff, could be used to better effect for the retaining wall than if the exact specifications of the drawings had been followed, and also because defendant never rejected the rods as nonconforming. Further, despite counsel's statements in closing argument that $2,100 worth of the rods were not specially manufactured, there was probative evidence that some of the straight rods were cut to smaller sizes, and thus, were not suitable for sale to others in the ordinary course of business; and, there was no probative evidence demonstrating how many of the rods delivered to the defendant were uncut and unbent and what was their aggregate value.

Second, R.C. 1302.04(C)(3) makes an unsigned contract enforceable when the goods have been received and accepted by the buyer. The evidence demonstrated that defendant made no attempt to reject the rods within a reasonable time after delivery to his construction site and no attempt to notify the seller "seasonably" as required by R.C. 1302.61(A).[2] In fact,

---

[2] R.C. 1302.61(A) reads as follows:
"Rejection of goods must be within a reasonable time after their delivery or tender.

It is ineffective unless the buyer seasonably notifies the seller."

defendant admitted he never inspected the steel on the site. Therefore, he accepted the goods under R.C. 1302.64(A)(2),[3] and the sale became enforceable under R.C. 1302.04(C)(3). *Pride Laboratories, Inc.,* v. *Sentinel Butte Farmers Elevator Co.* (N.D. 1978), 268 N.W. 2d 474; *Haken* v. *Scheffler* (1970), 24 Mich. App. 196, 180 N.W. 2d 206.

In brief, the defendant failed to carry the burden of proving the affirmative defense of the bar of the statute of frauds, and the state of the evidence was such that reasonable minds could conclude that the contract was enforceable under either R.C. 1302.04(C)(1) or (C)(3).

The assignment of error has no merit. We affirm.

*Judgment affirmed.*

BLACK, P.J., KEEFE and KLUSMEIER, JJ., concur.

---

[3] R.C. 1302.64 reads, in part, as follows:

"(A) Acceptance of goods occurs when the buyer:

"* * *

"(2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them * * *[.]"